**KOTLER INDUSTRIES, INC., Plaintiff,**

**v.**

**The IMMIGRATION AND NATURALIZATION SERVICE, A.D. Moyer, as District Director of the Immigration & Naturalization Service, and James Cole, as Assistant District Director of the Chicago District of the Immigration & Naturalization Service for Investigations, Defendants.**

**No. 83 C 4983.**

United States District Court, N.D. Illinois, E.D.

May 21, 1984.

Terry Yale Feiertag, Minsky & Feiertag, Chicago, Ill., for plaintiff.

Mary Anne Mason, Asst. U.S. Atty., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Kotler Industries, Inc. ("Kotler") is an Illinois corporation with two factories located at 2646 West Fulton and 300 North Oakley in Chicago. Since the fall of 1980, the Immigration and Naturalization Service ("INS") has made several attempts to search Kotler's employment records and premises for illegal aliens. Acting under two warrants issued by a United States magistrate, the INS searched Kotler's factories on July 20, 1983, and arrested more than thirty Kotler employees on the basis of their illegal presence in this country. Kotler then filed this suit, seeking a declaratory judgment that the INS searches of its premises and the arrests of its employees violated Kotler's rights under the Fourth, Fifth and Ninth Amendments to

the United States Constitution. Kotler also requests an injunction prohibiting the defendants from conducting "constitutionally impermissible area control operations" against it in the future. The parties agree that there are no disputed issues of material fact in this case, and they have filed cross-motions for summary judgment. For the reasons set forth below, Kotler's motion for summary judgment is denied, and the defendants' motion for summary judgment is granted.

■ Kotler, the owner of the factories which the INS searched, is the only plaintiff in this action. None of Kotler's employees who were questioned or arrested by the INS are parties. The INS searches implicate two distinct interests: Kotler's interest in being free from unreasonable searches of its factories and the employees' interests in being free from unreasonable searches and seizures. *Cf. Steagald v. United States*, 451 U.S. 204, 216, 101 S.Ct. 1642, 1649–50, 68 L.Ed.2d 38 (1981) (distinguishing interests of subject of arrest warrant and third party in whose home government agents searched for subject). Kotler blurs this distinction and repeatedly asserts certain rights of its employees. For example, Kotler requests a declaration that the arrests of its employees were illegal. However, Kotler does not have standing to assert its employees' claims, and we decline to reach any questions concerning the individual employees' constitutional rights. *E.g., Garcia v. INS*, No. 81–F–680, slip op. at 8, 23, 25 (D.Colo. Nov. 4, 1982); *see also Rakas v. Illinois*, 439 U.S. 128, 133–34, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978) (Fourth Amendment rights are personal and may not be asserted vicariously); *Alderman v. United States*, 394 U.S. 165, 174, 89 S.Ct. 961, 966, 22 L.Ed.2d 176 (1969) (same); *Babula v. INS*, 665 F.2d 293, 297 (3d Cir.1981) (employees cannot assert Fourth Amendment rights of factory owner); *Illinois Migrant Council v. Pilliod*, 531 F.Supp. 1011, 1020 n. 18 (N.D.Ill.1982)

(same).[1] Kotler's interests in this case are thus limited to ensuring that the search warrants were properly issued, supported by the requisite degree of probable cause and executed in a manner consonant with the language authorizing the search.

## A.

■ Kotler argues first that the magistrate had no authority to issue civil warrants permitting the INS to search for illegal aliens. This contention is meritless. As the District of Columbia Circuit Court of Appeals has explained, the power of the INS to obtain search warrants for commercial premises may be inferred from its general statutory power to seek out and question suspected illegal aliens. *Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211, 1219–22 (D.C.Cir.1981), *cert. denied*, 455 U.S. 940, 102 S.Ct. 1432, 71 L.Ed.2d 651 (1982). The United States Supreme Court made this same inference quite recently in *INS v. Delgado*, —— U.S. ——, 104 S.Ct. 1758, 1763 n. 5, 80 L.Ed.2d 247 (1984) (INS agents acting under search warrants were "lawfully present" in factory). Since the INS may *seek* and *use* civil warrants for factory searches, it is clear that federal magistrates and judges may properly *issue* such warrants. *Cf.* 28 U.S.C. § 1651 (courts may issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law"); *United States v. Illinois Bell Telephone Co.*, 531 F.2d 809 (7th Cir.1976) (district court had authority to order installation of pen register).

## B.

Kotler also claims that the magistrate issued the search warrants without a sufficient showing of probable cause. Kotler argues that the traditional criminal law standard of probable cause should be applied to the search warrants in this case. Citing *Stanford v. Texas*, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965), and *Mar-*

---

**1.** For an interesting discussion of the employees' rights in factory searches, see Comment, *INS Surveys of Business Establishments: Rea-* *sonable, Individualized Suspicion of Illegal Alienage*, 78 Nw.U.L.Rev. 632 (1983).

*ron v. United States,* 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927), for the proposition that general searches are forbidden by the Fourth Amendment, Kotler reasons that the evidence presented to the magistrate and the warrants which the magistrate issued should have particularly described each of the suspected illegal aliens to be searched for by the INS.

The defendants argue that a less rigid standard of probable cause should be applied to warrants obtained by the INS for factory searches. They assert that because the detention and deportation of illegal aliens is a civil law enforcement activity,[2] the INS search warrant differs significantly from a traditional criminal warrant. The defendants urge this Court to follow the District of Columbia Circuit's decision in *Blackie's House of Beef, Inc. v. Castillo,* 659 F.2d 1211 (D.C.Cir.1981), *cert. denied,* 455 U.S. 940, 102 S.Ct. 1432, 71 L.Ed.2d 651 (1982), which held that a more flexible definition of probable cause is appropriate "to comport with the multiplicity of 'hybrid' administrative law enforcement activities in a noncriminal context." *Id.* at 1222.

The *Blackie's* Court relied considerably on the Supreme Court's decision in *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). In *Barlow's,* the Court held unconstitutional a statute which allowed OSHA officials to conduct a warrantless search of the work area of any facility within OSHA's jurisdiction. The Court ruled that absent a proper warrant or exigent circumstances, such an intrusion upon commercial premises, even if motivated by a valid regulatory purpose, violates the Fourth Amendment. The Court then discussed the type of warrant sufficient to support a routine OSHA inspection:

> *Probable cause in the criminal law sense is not required.* For purposes of an administrative search such as this,

probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that "reasonable legislative or administrative standards for conducting an ... inspection are satisfied with respect to a particular [establishment]."

*Id.* at 320, 98 S.Ct. at 1824, *quoting Camara v. Municipal Court,* 387 U.S. 523, 538, 87 S.Ct. 1727, 1735, 18 L.Ed.2d 930 (emphasis added). The Seventh Circuit has read *Barlow's* as holding that criminal probable cause is not required for *either* routine administrative plan inspections or searches based on specific evidence of an existing violation. *Burkart Randall Division of Textron, Inc. v. Marshall,* 625 F.2d 1313, 1317 (7th Cir.1980). The *Blackie's* Court found the reasoning of *Barlow's* and *Burkart* dealing with OSHA factory searches to be equally applicable to INS searches.

■ We agree with the District of Columbia Court of Appeals that, at least insofar as a factory *owner's* rights are concerned, the INS may obtain a search warrant by satisfying a more flexible standard of probable cause than that traditionally applied in criminal cases.[3] In this case, the INS presented specific evidence to a United States magistrate that Kotler was employing illegal aliens. Such evidence that persons illegally present in this country are working for a particular company may be sufficient to support INS searches of that company's premises.

Kotler contends that the evidence submitted to the magistrate was inadequate to establish probable cause that illegal aliens could be found in Kotler's factories. We disagree. The INS had received several anonymous telephone calls between March 15, 1983, and May 29, 1983, regarding the employment of illegal aliens at Kotler. In each instance, the caller provided the INS

---

**2.** *See Harisiades v. Shaughnessy,* 342 U.S. 580, 594, 72 S.Ct. 512, 521, 96 L.Ed. 586 (1952).

**3.** Although the factory employees' rights add a dimension to INS searches that is not present with OSHA searches, Kotler may not assert the rights of its employees. Kotler's interest in being free from unreasonable searches of its factories is roughly the same whether the objects of the searches are violations of OSHA regulations or illegal aliens.

with first and last names of suspects. On May 20, 1983, the INS apprehended ten illegal aliens who said they worked at Kotler. The names of two of these persons had been provided previously by anonymous callers. Three of the persons arrested on May 20 named seven other Kotler employees believed to be present illegally in the United States. The names of three of these seven employees had also been provided before by anonymous callers. Also, Kotler confirmed the fact that it employed two of the persons named by an anonymous caller on May 20, 1983. The INS presented all this evidence to the magistrate when it applied for the search warrants.

■ Kotler claims that the INS's reliance on anonymous tips was improper. Not only did the INS lack information about the informants' knowledge or reliability, but the INS learned—before it obtained and executed the search warrants—that some of the suspects named by the anonymous callers were legally present in this country. However, the anonymous tips *were* corroborated in other respects: some of the suspects named by callers were arrested and determined to be illegal aliens, and some Kotler employees who were apprehended by the INS named other aliens who also had been identified by the anonymous callers. Thus, the totality of circumstances indicates that at least some of the information provided by the callers was accurate. Neither the INS nor the magistrate erred in considering this information. *See Illinois v. Gates,* 462 U.S 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Taken together, the information provided by the anonymous callers and the arrests of illegal aliens employed by Kotler provide a sufficient basis for a reasonable suspicion that other aliens could be found on Kotler's premises. Thus, there was adequate probable cause supporting the search warrants in this case.

**4.** The INS in fact did not limit its searches to the list of suspected aliens.

**5.** Note that a particularized warrant listing suspects is unnecessary. Cases in which search

### C.

■ Finally, Kotler argues that the INS searches exceeded the scope of the warrants. The company claims that the INS was authorized to search only for certain suspected aliens listed in an appendix to the warrants, rather than for all illegal aliens present on Kotler's premises. The INS, on the other hand, states that it sought and obtained warrants authorizing it to search for any illegal aliens working at Kotler.[4]

The language of the search warrants is rather ambiguous regarding this question. On the second page of the warrants, the INS is authorized to search for "the aliens appearing on the attached list"—this wording supports Kotler's interpretation. However, on the first page of the warrants the magistrate states that probable cause has been shown that illegal aliens are located on Kotler's premises, and that the names of *some* of these aliens appear on an attached list—thus indicating that the list was not intended to be exhaustive.

Even if Kotler's more restrictive view of the warrants is taken, the INS searches of Kotler's premises would have been no less intrusive and would not have violated Kotler's constitutional rights. Thus, assuming *arguendo* that the INS was authorized to search for the listed suspects only, the INS agents still would have been required to pursue the same course of conduct as they did in this case. They still would have needed to completely search the factories as well as to question every employee who might be listed as a suspected illegal alien. *See Blackie's House of Beef, Inc.,* 659 F.2d at 1225. And the discovery of unnamed aliens during the course of the search of named aliens would in no way be tainted. We conclude that Kotler's rights were not violated by the failure of the INS to limit its searches to the list of suspects appended to the warrants.[5]

warrants named no specific suspected aliens include *INS v. Delgado,* —— U.S. ——, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984), and *Blackie's House of Beef, Inc. v. Castillo,* 659 F.2d 1211 (D.C.Cir.

Accordingly, Kotler's motion for summary judgment is denied, and the defendants' motion for summary judgment is granted. It is so ordered.